## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | | |
|---|---|---|
| **LEONEL AND AMBER ZECAIDA, INDIVIDUALLY AND AS NEXT FRIENDS OF ROMAN ZECAIDA, A MINOR** | § § § § § | |
| *Plaintiffs,* | § § | **CIVIL ACTION NO.:** 6:09cv283 |
| v. | § § | |
| **BLITZ U.S.A., INC. AND WAL-MART STORES, INC., WAL-MART STORES EAST, L.P., WAL-MART STORES TEXAS, L.L.C., AND WAL-MART REALTY COMPANY** | § § § § § § § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § | |

FILED CLERK
U.S. DISTRICT COURT

2009 JUN 29  PM 2: 25

TEXAS EASTERN

BY_____

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

COME NOW Plaintiffs, Leonel Zecaida, Individually and as Next Friend and biological parent of Roman Zecaida, a minor (hereinafter, collectively referred to as "Plaintiffs"), and Amber Zecaida, as Next Friend and biological parent of Roman Zecaida, a minor and complain of Defendant, Blitz U.S.A., Inc. and Defendants, Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores Texas, L.L.C., and Wal-Mart Realty Company as follows:

## PARTIES

1.     Plaintiffs are individuals and citizens of the State of Texas who reside in Longview, Gregg County, Texas.  Leonel and Amber Zecaida bring this suit Individually, and as Next Friends for their minor son, Roman Zecaida, born on November 4, 2004.

2.     Defendant, Blitz U.S.A., Inc. (hereinafter, "Blitz") is an Oklahoma corporation that has engaged in business in the State of Texas but maintains its principal place of business in the State of Oklahoma.  Blitz may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201-4201.

3.     Defendant Wal-Mart Stores Inc. is a Delaware corporation that has engaged in business in the State of Texas but maintains its principal place of business is in Bentonville, Arkansas.  Wal-Mart Stores Inc. may be served with process by serving its registered agent, CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201-4201.

4.     Defendant Wal-Mart Stores East, L.P. is a Delaware limited partnership that has engaged in business in the State of Texas but maintains its principal place of business is in Bentonville, Arkansas.  Wal-Mart Stores East, L.P. may be served with process by serving its registered agent, CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201-4201.

5.    Defendant Wal-Mart Stores Texas, L.L.C. is a Delaware limited liability company that has engaged in business in the State of Texas but maintains its principal place of business is in Bentonville, Arkansas. Wal-Mart Stores Texas, L.L.C. may be served with process by serving its registered agent, CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201-4201.

6.    Wal-Mart Realty Company is a Delaware corporation that has engaged in business in the State of Texas but maintains its principal place of business is in Bentonville, Arkansas. Wal-Mart Realty Company may be served with process by serving its registered agent, CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201-4201.

7.    These four defendants, Wal-Mart Stores Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores Texas, L.L.C., and Wal-Mart Realty Company are hereinafter referred to as "Wal-Mart."

## JURISDICTION AND VENUE

8.    This court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiffs and Defendants. Plaintiffs are citizens of the State of Texas. Blitz and Wal-Mart are foreign corporations that maintain principal places of business outside the State of Texas.

9.    The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

10.     This Court also has jurisdiction over this lawsuit because Plaintiffs assert a claim for damages under the Consumer Product Safety Act, 15 U.S.C. § 2072, and therefore, the case raises a federal question.

11.     This Court has jurisdiction over Blitz and Wal-Mart because each has purposefully availed itself of the privilege of conducting activities in the State of Texas and, by placing Blitz portable gas cans, including the subject container, into the stream of commerce, each has established continuous and systematic contacts sufficient to confer general jurisdiction.

12.     Jurisdiction over Blitz and Wal-Mart will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

13.     Venue in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and/or omissions giving rise to this claim occurred in Gregg County, which is within the Eastern District of Texas.

## FACTS AND GENERAL ALLEGATIONS

14.     In 2005, Leonel bought a Blitz 1+ one gallon gas can from the Wal-Mart store located at 2440 Gilmer Road, Longview, Texas 75604.

15.     On or about July 1, 2007, Leonel filled the Blitz 1+ one gallon gas can with gasoline, which he subsequently poured into the gasoline tank of his lawn mower. Leonel then placed the yellow cap on the spout of the gas can and placed the gas can on a nearby patio table located behind the Zecaida residence.

16. At all times relevant hereto, Amber was inside the Zecaida residence tending to the Zecaidas' two week old infant.

17. While Leonel was mowing the backyard lawn, two year old Roman Zecaida was in the backyard playing with his toys. Roman got a hold of the Blitz gas can and removed the yellow cap from the gas can.

18. Roman carried the gas can into the storage room of the duplex in which the Zecaidas resided and which opened to the backyard.

19. Leonel turned and saw Roman in the storage room and saw the gas can laying on the floor in a puddle of gasoline.

20. Leonel ran to the storage room to retrieve Roman.

21. As Leonel picked up Roman, the gasoline vapors were ignited and the lower half of Roman burst into flames. As Leonel turned to run out of the building with his burning child, the Blitz gas can exploded, burning Leonel Zecaida's leg.

22. As a result of the explosion and the ensuing fire, Roman suffered catastrophic third-degree burns over one-third of his body. Emergency personnel were called to the scene. Roman was transported to Parkland Hospital in Dallas, Texas, where he was hospitalized in their burn unit.

23. Roman received skin grafts and has been left with permanent disfiguring scars over the entirety of his legs.

24. Blitz is the largest manufacturer of portable plastic gas cans in the United States, controlling over 70% of the market.

25. Blitz designed, manufactured, assembled, marketed, distributed, and sold the gas can that caused Leonel's and Roman's injuries.

26. During the relevant time period, Wal-Mart was the largest retailer of gas cans in the United States and sold, distributed and intentionally placed into the stream of commerce the gas can that was the cause of, and/or a contributing cause of, the fire, explosion and resulting injuries described herein.

27. At all relevant times, the gas can was not modified or altered and was in substantially the same condition as when it left the control of Blitz and Wal-Mart and at all times, the container was being used in an ordinary and foreseeable manner and/or environment.

28. As a result of Blitz's and Wal-Mart's acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the gas can, Roman suffered, and continues to suffer, severe personal injuries, excruciating physical pain and impairment, physical disfigurement, mental anguish and emotional distress.

29. Further, as a result of his injuries, Plaintiffs have incurred significant medical and other related expenses and Roman will require additional medical care in the future and additional expenses. Roman's injuries are permanent and his ability to perform ordinary activities and enjoy life has been permanently and adversely affected as well as his future earning potential.

PLAINTIFFS' ORIGINAL COMPLAINT
Zecaida v. Blitz, U.S.A., Inc.

6

## COUNT I
### BLITZ - STRICT LIABILITY
### TEX. CIV. PRAC. & REM. CODE ANN. § 82.005

30.     Plaintiffs adopt the allegations of paragraphs 1 - 29 above and incorporate the same where relevant.

31.     Plaintiffs invoke the doctrine of strict liability as provided by § 402A, Restatement (Second) of Torts and adopted by the Texas Supreme Court.

32.     The portable gas can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

33.     The portable gas can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was the producing cause of the injuries sustained by Leonel and Roman Zecaida.

34.     Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gas cans, including the gas can in the present case, to consumers within the stream of commerce.

35.     Blitz expected the portable gas can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users, such as Plaintiffs, without substantial change in the condition in which it was originally sold.

36.     The portable gas can in the present case did in fact reach Plaintiffs without substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use.

37.  At the time the portable gas can left Blitz's control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of a child being able to open the can, spilling of the contents and exploding of the can without substantially impairing the usefulness and intended purpose of the product.

38.  Blitz failed to equip the gas can with child-resistant and/or spill-proof closures.

39.  Blitz instead put a yellow "line up the arrow" cap on its spout that looked child resistant but in reality was not and could be easily removed by children under the age of five, and had never been tested for child resistance.

40.  Blitz failed to adequately test the gas can and its closures to quantify the risk it posed to children despite the fact that Blitz was well aware of existence of child resistant closures, the financial feasibility of child resistant closures and the need for child resistant closures due to other incidents where children had allegedly opened gas cans.

41.  The portable gas can was also unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrester, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

42.   A flame arrester, sometimes called a flame arresting screen, flash arrester or spark arrester, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal screen or a wire mesh screen.

43.   The efficacy of flame arresters has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1950's and began being placed in consumer gas cans in 1978.

44.   For more than a quarter century, the utility and efficacy of flame arresters has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders that have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

45.   Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arresters are susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trail back inside the container causing it to explode and/or spew flames and burning gasoline).

PLAINTIFFS' ORIGINAL COMPLAINT
Zecaida v. Blitz, U.S.A., Inc.

9

46.   Without the inclusion of a child resistant closure on all openings, a spill proof spout and a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the portable gas can far exceeded any utility and/or benefits associated with its design.

47.   Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate well-known safety devices into their portable gas cans, despite the fact that these safety devices are economically and technologically feasible.

48.   As a direct and proximate result of one or more of Blitz's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress.   Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment.   Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and subsequently suffering from the injuries Roman has and will endure.

## COUNT II
### BLITZ – FAILURE TO WARN

49.   Plaintiffs adopt the allegations of paragraphs 1 - 48 above and incorporate the same where relevant.

50.   Blitz failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person given that its warnings were not conspicuous given its red on red raised lettering.

51.   At the time the portable gas can left Blitz's control, consumers and/or foreseeable users, such as Plaintiffs, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using their portable gas cans.

52.   Without such knowledge, consumers and/or foreseeable users, especially children, would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care.   Conversely, Blitz knew, and was certainly in the best position to know, that its portable gas cans, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

53.   As a direct and proximate result of one or more of Blitz's failure to warn of the gas can's defective design, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress.   Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other

expenses, for his care, support and treatment.  Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## COUNT III
### BLITZ - NEGLIGENCE

54.    Plaintiffs adopt the allegations of paragraphs 1 - 53 above and incorporate the same where relevant.

55.    Blitz owed consumers and/or foreseeable users, including Plaintiffs, a reasonable duty of care in the design and production of its portable gas cans, as well as in the marketing, distribution, and sale of said product.

56.    Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

A.    Failed to design and produce a reasonably safe portable gas can;

B.    Designed, manufactured, assembled, marketed, distributed, and sold a portable gas can that was defective;

C.    Placed into the stream of commerce a portable gas can that was defective in design;

D.    Placed into the stream of commerce a portable gas can that was defective in that it failed to contain adequate warnings and instructions;

E.    Placed into the stream of commerce a portable gas can that was unfit for its intended use;

F.    Placed into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

G.    Placed into the stream of commerce a portable gas can that contained manufacturing defects;

H.   Failed to incorporate child resistant and/or spill proof technology in its closure design;

I.   Failed to incorporate a flame arrester in the product design;

J.   Failed to properly test its portable gas cans and prototypes thereof with flame arresting material;

K.   Failed to test its closures for child resistance and/or child access;

L.   Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

M.   Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user or that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;

N.   Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

O.   Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

P.   Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

Q.   Failed to take subsequent remedial measure or to recall the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

R.   Ignored or failed to investigate scientific, technological, and industry information and studies regarding the efficacy of child resistant closures, spill proof technology and flame arresters;

S.   Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans;

T.   Failed to report incidences and lawsuits involving other consumers, users, and bystanders, who have been burned and/or killed when encountering the portable gas cans to the Consumer Product Safety Commission;

U.   Failed to warn that the gas can was not equipped with child-resistant devices or other safety devices;

V.   Failed to adequately test the gas can to quantify the risk it posed to children and continued to use a design after it failed child resistant testing;

W.   Failed to equip the can with a permanent self-venting spout with child-resistant and/or spill-proof closures;

X.   The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to children beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility;

Y.   Blitz knew or should have known that consumers would store their gas cans in locations, such as garages, utility rooms, basements, storage rooms and storage areas where it was reasonably foreseeable that water heaters would be present, creating an unreasonable and unexpected hazard of ignition and resulting fire, without appropriate design features to prevent access to children or prevent ignition and flashback.

57.   As an actual and proximate result of Blitz's negligent acts and/or omissions, the portable gas can that caused Leonel's and Roman's injuries was placed into the stream of commerce in a defective and unreasonably dangerous condition.

58.   Leonel's and Roman's injuries and the manner in which they occurred were reasonably foreseeable to Blitz who had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

59. As a direct and proximate result of one or more of Blitz's negligent acts or omissions as described herein, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress. Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment. Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## COUNT IV
### BLITZ - BREACH OF WARRANTY

60. Plaintiffs adopt the allegations of paragraphs 1 - 59 above and incorporate the same where relevant.

61. Blitz, by and through the sale of its portable gas cans, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Plaintiffs, that the container was fit for its ordinary and foreseeable purposes.

62. Plaintiffs made ordinary use of the container in reliance on said warranties.

63. Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

64. Blitz breached its express and implied warranties by one or more of the following respects, among others:

A. Failure of the gas can itself and by improper marketing;

B.   Failed to equip the gas can with a child-resistant device, spill-proof device, flame-arresters, and/or other safety devices to make the gas can safe for its foreseeable environment (i.e., residential use);

C.   Failed to provide adequate warnings about the inherent dangers involved in the use of gasoline and its gas can;

D.   Failed to warn that the gas can was not equipped with child-resistant devices or other safety devices;

E.   The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to children beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

F.   Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

G.   Blitz knew or should have known that consumers would store their gas cans in locations, such as garages, utility rooms, basements, storage rooms and storage areas where it was reasonably foreseeable that water heaters and gas fired appliances would be present, creating an unreasonable and unexpected hazard of ignition and resulting fire, without appropriate design features to prevent access to children, spillage and/or flashback;

H.   Failed to assure that the product design included a flame arrester;

I.   Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Blitz knew or should have known existed;

J.   Failed to recall and/or repair the product;

K.   Placed on the market a gas can which was unfit for its intended use;

L.   Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

65. As an actual and proximate result of Blitz's breach of said warranties, the portable gas can was placed into the stream of commerce in a defective and unreasonably dangerous condition.

66. Leonel's and Roman's injuries and the manner in which they occurred were reasonably foreseeable to Blitz who had actual and/or constructive knowledge from within the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

67. As a direct and proximate result of said breach of warranty, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress.  Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment.  Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## COUNT V
### BLITZ - MISREPRESENTATION

68. Plaintiffs adopt the allegations of paragraphs 1 - 67 above and incorporate the same where relevant.

69. Blitz is strictly liable to Plaintiffs pursuant to § 402B of the Restatement (Second) of Torts, for misrepresenting to consumers and/or foreseeable users, such as Plaintiffs, that their portable gas cans were safe for residential use and without defect.

70. Such representation was false and involved a material fact concerning the character or quality of the gas can in question.

71. Plaintiffs justifiably relied on such representation, which constituted a proximate and producing cause of Leonel's and Roman's injuries.

72. As a direct and proximate result of Blitz's said misrepresentation, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress. Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment. Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## COUNT VI
### BLITZ - NEGLIGENCE PER SE

73. Plaintiffs adopt the allegations of paragraphs 1 - 72 above and incorporate the same where relevant.

PLAINTIFFS' ORIGINAL COMPLAINT
Zecaida v. Blitz, U.S.A., Inc.

18

74. Blitz's failure to report the prior claims and/or potential hazards associated with their portable gas cans as required by the Consumer Product Safety Act, 15 U.S.C. § 2064, 2084, constituted negligence per se.

75. As users of a consumer product, Plaintiffs were members of the class of persons the statute was designed to protect, and Leonel's and Roman's injuries are of the type the statute was designed to prevent.

76. Because Blitz failed to report the prior claims and/or potential hazards associated with its defective and unreasonably dangerous portable gas cans, it was foreseeable that users of the product, such as Plaintiffs, could be severely injured and/or killed when the container unexpectedly and violently exploded.

77. Blitz's violations of the consumer product safety rules were done without excuse.

78. As a direct and proximate result of Blitz's failure to report the prior claims and/or potential hazards associated with their portable gas cans, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress. Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment. Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## COUNT VII
### WAL-MART - STRICT LIABILITY
#### TEX. CIV. PRAC. & REM. CODE ANN. § 82.003

79.   Plaintiffs adopt the allegations of paragraphs 1 - 78 above and incorporate the same where relevant.

80.   Plaintiffs invoke the doctrine of strict liability as provided by § 402A, Restatement (Second) of Torts and adopted by the Texas Supreme Court.

81.   The gas can was defectively designed and unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

A.    Wal-Mart sold a gas can without a child-resistant closure, spill-proof closure, flame-arrester and/or other safety devices;

B.    Wal-Mart participated in and had impacted the design of Blitz's gas cans and knew that it had the ability to impact the design of Blitz's gas cans;

C.    Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas container they sold, including but not limited to, the fact that their closures were not actually child-resistant;

D.    Wal-Mart sold Blitz gas cans that contained manufacturing defects;

E.    Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of childhood access, flammable vapor ignition, flashback and explosion to children beyond that understood or contemplated by the average reasonable consumer/purchaser and the risks associated with this design outweighed its utility;

F.    Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition to children and/or adults, and failed to offer such cans for sale and instead sold the defective gas container to Plaintiffs and knew of incidents where children had accessed gasoline and been burned as a result, gasoline had been spilled from gas cans causing burn injuries and/or gasoline cans had exploded causing burn injuries; and

G.    Wal-Mart knew or should have known that consumers would store their gas containers in locations, such as garages, utility rooms, storage rooms, storage areas and basements where it was reasonably foreseeable that water heaters, boilers and other gas appliances would be present, creating an unreasonable and unexpected hazard of ignition and resulting fire, without appropriate design features to prevent access by children or flashback.

82.    Wal-Mart had actual knowledge of the defects alleged herein, had actually joked about the dangers at management and supplier meetings, and in putting the gas container into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Leonel, Roman and other foreseeable plaintiffs, and therefore an award of punitive damages in an amount is appropriate.

83.    As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress.   Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment.   Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

### COUNT VIII
### WAL-MART - NEGLIGENCE

84.    Plaintiffs adopt the allegations of paragraphs 1 - 83 above and incorporate the same where relevant.

85.   Wal-Mart committed one or more of the following negligent acts and/or omissions in the design, construction, manufacture, engineering, marketing and sale of the gas container:

A.   Wal-Mart sold a gas can without a child-resistant closure, spill-proof closure, flame-arrester and/or other safety devices;

B.   Wal-Mart participated in and had impacted the design of Blitz's gas cans;

C.   Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas container they sold, including but not limited to, the fact that their closures were not actually child-resistant;

D.   Wal-Mart sold Blitz gas cans that contained manufacturing defects;

E.   Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to children beyond that understood or contemplated by the average reasonable consumer/purchaser and the risks associated with this design outweighed its utility;

F.   Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition to children and/or adults, and failed to offer such cans for sale and instead sold the defective gas container to Plaintiffs; and

G.   Wal-Mart knew or should have known that consumers would store their gas containers in locations, such as garages, utility rooms, storage rooms, storage areas and basements where it was reasonably foreseeable that water heaters, boilers and other gas appliances would be present, creating an unreasonable and unexpected hazard of ignition and resulting fire, without appropriate design features to prevent access by children or flashback.

86.   As a direct and proximate result of Wal-Mart's negligence, the gas container was sold in a defective condition, unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use.

87.   Wal-Mart had actual knowledge of the defects alleged herein, had joked about them in management and supplier meetings, and in subsequently putting the gas container into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of the Plaintiffs, and therefore an award of punitive damages is appropriate.

88.   The injuries to Leonel and Roman Zecaida and the manner in which those injuries occurred were reasonably foreseeable to Wal-Mart who knew or should have known that children and adults were being severely burned when encountering gas containers.

89.   As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress.  Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment.  Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

### COUNT IX
#### WAL-MART – BREACH OF WARRANTY

90.   Plaintiffs adopt the allegations of paragraphs 1 - 89 above and incorporate the same where relevant.

91.   Wal-Mart is a merchant of gas cans.

92.   In selling and placing the gas can into the stream of commerce, Wal-Mart impliedly warranted that the gas can was merchantable and fit for the ordinary, anticipated and foreseeable purposes for which it was intended to be used.

93.   Wal-Mart breached said implied warranty in one or more of the following respects, among others:

    A.   Wal-Mart sold a gas can without a child-resistant closure, spill-proof closure, flame-arrester and/or other safety devices;

    B.   Wal-Mart participated in and had impacted the design of Blitz's gas cans;

    C.   Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas container they sold, including but not limited to, the fact that their closures were not actually child-resistant;

    D.   Wal-Mart sold Blitz gas cans that contained manufacturing defects;

    E.   Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to children beyond that understood or contemplated by the average reasonable consumer/purchaser and the risks associated with this design outweighed its utility;

    F.   Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition to children and/or adults, and failed to offer such cans for sale and instead sold the defective gas container to Plaintiffs; and

    G.   Wal-Mart knew or should have known that consumers would store their gas containers in locations, such as garages, utility rooms, storage rooms, storage areas and basements where it was reasonably foreseeable that water heaters, boilers and other gas appliances would be present, creating an unreasonable and unexpected hazard of ignition and resulting fire, without appropriate design features to prevent access by children or flashback.

94.   As a direct and proximate result of Wal-Mart's breach of warranty, Roman suffered serious, severe, disfiguring, permanent and disabling burn injuries, psychological impairment, economical damages, loss of earning capacity, past and future medical expenses, pain and suffering, and severe mental anguish and emotional distress. Leonel and Amber Zecaida have incurred, and will continue to incur, reasonable and necessary medical and other expenses, for his care, support and treatment. Leonel Zecaida also suffered burn injuries, pain and suffering, and severe emotional distress at seeing his child on fire and suffering from the injuries he received.

## DAMAGES

95.   Plaintiffs adopt the allegations of paragraphs 1 - 94 above and incorporate the same where relevant.

96.   Plaintiffs seek all damages recoverable under both statutory and common law.

97.   As a direct and proximate result of Defendants' acts and/or omissions, Roman Zecaida suffered severe, painful, and catastrophic burn injuries, which resulted in the following damages:

A.   Past and future medical expenses;

B.   Past and future mental anguish;

C.   Past and future physical pain and suffering;

D.   Past and future physical impairment;

E.   Past and future physical disfigurement;

F.   Past and future lost earnings;

G.    Loss of future earning capacity; and

H.    Loss of consortium.

98.    As a direct and proximate result of Defendants' acts and/or omissions, Leonel Zecaida suffered painful burn injuries and severe emotional distress at seeing his child on fire and continuing to suffer in a burn unit.

## EXEMPLARY DAMAGES

99.    Plaintiffs adopt the allegations of paragraphs 1 - 98 above and incorporate the same where relevant.

100.    Defendants' acts and/or omissions pertaining to the its portable gas cans, when viewed objectively from Defendants' standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others from gas cans that are highly susceptible to explosions.

101.    Moreover, Defendants had actual, subjective awareness of such risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others and even joked about such injuries.

102.    Defendants' acts and/or omissions constituted a flagrant disregard for the safety of consumers, users, and bystanders that encounter its portable gas cans, including Plaintiffs.

103.    Thus, Plaintiffs are entitled to exemplary damages for injuries resulting from gross negligence in an amount to be determined by a jury.

PLAINTIFFS' ORIGINAL COMPLAINT
Zecaida v. Blitz, U.S.A., Inc.

26

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For damages in excess of $75,000 sustained by Plaintiffs, including, but not limited to, those damages set forth above in an amount to be determined by the trier of fact;

B.    For exemplary damages in an amount to be determined by the trier of fact;

C.    For pre-judgment and post-judgment interest;

D.    For all costs of Court; and

E.    For any such further relief that Plaintiffs may be justly entitled.

Respectfully submitted,

**MATTHEW B. FLANERY**
Texas Bar No. 24012632
**DARREN GRANT**
Texas Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080 (Telephone)
(903) 596-8086 (Facsimile)

**DIANE M. BRENEMAN**
Missouri Bar No. 39988
**STACEY L. DUNGAN**
Missouri Bar No. 37180
**BRENEMAN DUNGAN, L.L.C.**
311 Delaware
Kansas City, Missouri 64105
(816) 421-0114 (Telephone)
(816) 421-0112 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFFS' RESPECTFULLY DEMAND A TRIAL BY JURY ON ALL COUNTS AND ISSUES**